ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| COBRA ACQUISITIONS, LLC<br><br>Apelante<br><br>v.<br><br>MUNICIPIO DE SALINAS Y OTROS<br><br>Apelada | **KLAN202500498** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2020CV01135<br><br>Sobre: Arbitrios de Construcción |
| | **CONSOLIDADO** | |
| COBRA ACQUISITIONS, LLC<br><br>Apelante<br><br>v.<br><br>MUNICIPIO DE HUMACAO Y OTROS<br><br>Apelada | **KLAN202500540** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2020CV01252<br><br>Sobre: Arbitrios de Construcción |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante este foro COBRA Acquisitions, LLC (COBRA o "parte apelante"), mediante los recursos consolidados de epígrafe y nos solicita que revisemos dos *Sentencias* emitidas por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificadas el 16 y 20 de mayo de 2025. En virtud del primer dictamen, el foro primario declaró *No Ha Lugar*, desestimó la *Demanda* instada por COBRA y declaró *Ha Lugar* la *Reconvención* presentada por el Municipio de Humacao. Por consiguiente, condenó a COBRA a pagarle a dicho Municipio la cantidad de $5,091,500.00 por concepto de

---

[1] Ver Orden Administrativa OATA-2025-113 del 17 de junio de 2025. Se modifica la integración del Panel.

Número Identificador
SEN2025 _____

arbitrios de construcción, más los correspondientes intereses y penalidades acumuladas. A su vez, los condenó al pago de costas, gastos y honorarios de abogados.

En cuanto a la segunda *Sentencia*, el foro primario declaró *No Ha Lugar* la *Demanda* instada por COBRA en contra del Municipio de Salinas, por consiguiente, la desestimó y los condenó al pago de las costas, gastos y honorarios de abogados.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** las *Sentencias* apeladas.

## I.

Los hechos que originaron las controversias que tenemos ante nuestra consideración se remontan luego del paso del Huracán María por Puerto Rico. Cuando, como parte de los esfuerzos de recuperación del sistema eléctrico de Puerto Rico tras el paso del Huracán, la Autoridad de Energía Eléctrica (AEE) contrató a la empresa COBRA para llevar a cabo labores de reconstrucción de la infraestructura eléctrica en varios Municipios, en este caso, el Municipio de Humacao y el Municipio de Salinas.

El 10 de febrero de 2020, COBRA presentó una *Demanda* de sentencia declaratoria contra el Municipio de Salinas, AEE y el Estado Libre Asociado de Puerto Rico (ELA) sobre el pago de arbitrios de construcción.[2] En esencia, cuestionó la facultad del Municipio para imponerle un arbitrio de construcción por constituir una imposición contributiva sobre la AEE, puesto que, el campo estaba ocupado. Así pues, solicitó le fuera

---

[2] *Demanda*, anejo A, págs. 1-34 del apéndice del recurso.

aplicada la exención en el pago de arbitrios de construcción de la AEE, por virtud de su Ley Habilitadora y la Ley Núm. 81-1991. Añadió que, se ordenara al Municipio a cancelar la deficiencia por arbitrios de construcción y que se le impusiera el pago de honorarios de abogado por temeridad. En la alternativa, solicitó que se ordenara al Municipio a que redujera la deficiencia por la cantidad que realmente se habría constituido alguna obra o actividad de construcción.

De igual forma, el 20 de febrero de 2020, la parte apelante presentó una *Demanda Enmendada* de sentencia declaratoria sobre el cobro de arbitrios de construcción en contra del Municipio de Humacao, la AEE y el ELA.[3]

El 27 de julio de 2020, el Municipio de Salinas, sin someterse a la jurisdicción, presentó una *Moción de Desestimación*.[4] Mediante la cual, sostuvo que el foro primario carecía de jurisdicción sobre la materia. Esbozó que, COBRA debió someterse al proceso administrativo provisto por el Artículo 2.007 de la Ley Núm. 81-1991, sobre pagar bajo protesta la deuda, para agotamiento de remedios.

El 28 de agosto de 2020, COBRA presentó *su Oposición a Solicitud de Desestimación*.[5] En esta, arguyó que no estaban obligados a agotar los remedios administrativos debido a que estaban solicitando una sentencia declaratoria. Asimismo, reiteró que no estaban obligados a pagar el arbitrio, ya que la AEE estaba exenta de toda contribución y, por ende, ellos tampoco

---

[3] *Demanda Enmendada*, anejo I, págs. 1-25 del apéndice del recurso KLAN202500540.
[4] *Moción de Desestimación*, anejo B, págs. 35-59 del apéndice del recurso.
[5] *Oposición a Solicitud de Desestimación,* anejo C, págs. 60-77 del apéndice del recurso.

estaban sujetos al procedimiento administrativo. A su vez, que no estaban cuestionando la cantidad reclamada, sino la autoridad del Municipio de Salinas de imponerle los arbitrios por obras realizadas.

Posteriormente, el 21 de diciembre de 2022, el Municipio de Humacao presentó su *Contestación a Demanda Enmendada y Reconvención*.[6] En su reconvención, alegó que COBRA no había presentado una *Declaración de Actividad de Construcción* previo a realizar los trabajos de restablecimiento y reparación de la red eléctrica dentro del Municipio, como tampoco luego de realizarlos. A su vez, solicitó el pago de arbitrios de construcción por la suma de $7,331,760.00, más intereses, recargos y penalidades.

El 21 de agosto de 2023, COBRA presentó en el caso contra el Municipio de Humacao, una *Solicitud de Sentencia Sumaria*.[7] En esencia, reiteró que éstos como contratistas de la AEE, eran beneficiarios de la exención total del pago de arbitrios de construcción municipal.

El 22 de septiembre de 2023, el Municipio de Humacao presentó su oposición y solicitud de sentencia sumaria a su favor.[8] El 15 de septiembre de 2023, COBRA presentó su réplica a la oposición y su oposición a la sentencia sumaria del Municipio.[9]

Luego de innumerables incidencias procesales en ambos pleitos, el 14 de mayo de 2025, COBRA presentó una

---

[6] *Contestación a Demanda Enmendada y Reconvención*, anejo II, págs. 26-34 del apéndice del recurso KLAN202500540.
[7] *Solicitud de Sentencia Sumaria*, anejo III, págs. 35-45 del apéndice del recurso.
[8] *Moción en Oposición a Solicitud de Sentencia Sumaria y en Solicitud de Sentencia Sumaria,* anejo IV, págs. 66-77 del apéndice del recurso KLAN202500540.
[9] *Réplica a "Moción en Oposicion a solicitud de Sentencia Sumaria" y Oposición a "Solicitud de Sentencia Sumaria"*, anejo V, págs. 84-90 del apéndice del recurso KLAN202500540.

*Moción Reiterando Solicitud para que se Adjudiquen as Mociones Dispositivas*.[10]   En esencia, solicitó fuera adjudicado el asunto con el Municipio de Salinas, sobre si la exención contenida en la Ley Habilitadora de la AEE se extiende a sus contratistas.

Así las cosas, el 19 de mayo de 2025, el foro primario emitió una *Resolución Interlocutoria*, mediante la cual declaró *No Ha Lugar* a la moción de desestimación presentada por el Municipio de Salinas.[11]

Posteriormente, el 16 de mayo de 2025, el foro apelado notificó la primera *Sentencia* apelada.[12]   En esta, declaró *No Ha Lugar* y desestimó la *Demanda* instada por COBRA contra el Municipio de Humacao.   A su vez, declaró *Ha Lugar* la *Reconvención* presentada por dicho Municipio.   Por consiguiente, condenó a COBRA a pagarles la cantidad de $5,091,500.00 por concepto de arbitrios de construcción, más los correspondientes intereses y penalidades acumuladas.   Asimismo, expuso los siguientes hechos incontrovertidos:

> 1. El Municipio Autónomo de Humacao ("el Municipio") es una entidad jurídica creada al amparo de las leyes del Gobierno de Puerto Rico con capacidad para demandar y ser demandado.
>
> 2. COBRA es una compañía de responsabilidad limitada organizada y existente al amparo de las leyes del Estado de Delaware y autorizada a hacer negocios en Puerto Rico.
>
> 3. El 19 de octubre de 2017, la AEE y COBRA suscribieron un *Master Services Agreement* ("el Contrato") para rehabilitar y/o reconstruir la infraestructura del sistema eléctrico de Puerto Rico, tras el paso devastador de los huracanes Irma y María.[13]

---

[10] Véase, *Moción Reiterando Solicitud para que se Adjudiquen as Mociones Dispositivas*, entrada núm. 72 en el Sistema de Unificado de Manejo y Administración de Casos (SUMAC).
[11] *Resolución Interlocutoria*, anejo __, págs. 81-82 del apéndice del recurso.
[12] *Sentencia*, anejo VI, págs. 92-113 del apéndice del recurso KLAN202500540.
[13] Para poder examinar el *Master Services Agreement*, este Tribunal tuvo que recurrir al expediente del caso SJ2020CV03931, el cual fue presentado por COBRA en contra de otro municipio (Utuado) y versa sobre idéntica controversia. Footnote en la *Sentencia* original.

4. Posteriormente, el 26 de mayo de 2018, la AEE y COBRA suscribieron un *segundo contrato* – bajo idénticos términos y condiciones a los incluidos en el *Master Services Agreement* - con vigencia hasta el 29 de mayo de 2019.

5. En el **Exhibit B** ("Contractor's Rate Schedule") del *Master Services Agreement* se estableció que la AEE incluiría como parte del costo del Contrato cualquier contribución **que exceda el 8.5%;** y para la cual COBRA no haya obtenido la correspondiente exención. Citamos:

> "In the event that any amounts to be paid to Contractor under this Contract are subject to any taxes (including withholding) imposed by any governmental authority of Puerto Rico **in excess of 8.5% and Contractor has not obtained an exemption for such taxes**, the amount to be paid to Contractor shall be increased by an amount that, after the payment of **such taxes**, leaves Contractor with the amount that Contractor would have received if Contractor had been exempt from all **such taxes**." (Énfasis en el original)

6. COBRA estuvo realizando los servicios de restablecimiento y recuperación del sistema eléctrico de Puerto Rico tras el paso de los Huracanes en el 2017 hasta el 25 de mayo 2019.

7. Como parte de los esfuerzos de recuperación y restablecimiento del sistema eléctrico de Puerto Rico, la AEE le solicitó a COBRA que trabajara en el área del Municipio de Humacao.

8. El 8 de enero de 2019 y el 15 de marzo de 2019 el Municipio envió a COBRA unas facturas con relación a los años 2017-2018, requiriendo el pago, entre otros, de arbitrios de construcción municipales conforme a la *Ley 81-1991* por obras de construcción cuyo costo ascendía a la cantidad de **$81,830,000.00** y por consiguiente arbitrio de construcción por la suma de $4,091,500.00 **(5%)** mientras que la factura final reflejaba un costo de construcción de **$101,830,000.00** y una contribución por arbitrio de construcción de $5,091,500.00 **(5%).** (Énfasis en el original)

9. *Mediante Notificación Final de Cobro de Arbitrios de Construcción*, fechada el 4 de octubre de 2019 y notificada el 15 de octubre de 2019, el Municipio de Humacao reclamó a COBRA el pago de $5,091,500.00 (**5% del costo del Proyecto**) por concepto de **arbitrio de construcción para el periodo 2017-2019.**

10. El 22 de octubre de 2019 COBRA presentó ante el Municipio una *Solicitud de Reconsideración* y *Vista Administrativa*, donde estableció su posición con relación al cobro de la deuda notificada y las faltas de garantías de debido proceso de ley provisto por el Municipio.

11. Mediante *Memorando* del 5 de diciembre de 2019, la *Oficina Central de Recuperación, Reconstrucción y Resiliencia de Puerto Rico*

("COR3") estableció lo siguiente en torno a la necesidad de incluir los arbitrios de construcción en los costos estimados para proyectos bajo FEMA:

> "No exemption is found for any reconstruction or recovery project performed by third party private contractors for Government Instrumentalities, Municipalities and PNP's. The only exemption is for equipment and contents purchased by health care facilities that are duly certified as exempt under Act 168 of June 30, 1986.
>
> For all of the above, **all cost estimates for projects under FEMA Public Assistance shall include Municipal Construction Taxes**, Municipal Patents and the 11.5% Sale and Use taxes (IVU) over materials and equipment as State or Municipal project costs, since these projects will be bid out and performed by private (third party) contractors. For PNP's, all taxes shall be applied as project costs, except for equipment and contents purchased by health care facilities duly certified as exempt under Act 168 of June 30, 1986." (Énfasis en el original)

12. El 5 de diciembre de 2019, a solicitud de COBRA, el Municipio de Humacao celebró una *Vista Administrativa*. Durante la *Vista Administrativa* se concedió a COBRA amplia oportunidad para presentar testigos y proveer cualquier documentación y/o información que esta considerara necesaria para poder atender su reclamo en torno a la *Notificación Final de Cobro de Arbitrios de Construcción* que le fuera notificada el 15 de octubre de 2019.

13. El 20 de diciembre de 2019 COBRA presentó al Municipio un "*Memorando Suplementario a la Solicitud de Reconsideración*".

14. Mediante *Notificación Final de Cobro de Arbitrios de Construcción (Proyecto AEE) / Notificación luego de Vista Administrativa*, fechada el 21 de enero de 2020 y ponchada como recibida el 6 de febrero de 2020, el Municipio de Humacao le notificó a COBRA que adeudaba **$5,091,500.00** por concepto de PRINCIPAL **(5% del costo del Proyecto)**; **$1,221,980.00** por concepto de INTERESES; y **$509,150.00** por concepto de PENALIDADES – para un TOTAL de **$7,331,760.00** al 31 de diciembre de 2019. (Énfasis en el original)

15. Por estar en desacuerdo con la *Notificación Final luego de Vista Administrativa,* y dentro del término provisto en ley para ello, COBRA presentó Demanda mediante la cual impugna la autoridad del Municipio de Humacao para cobrarle el arbitrio de construcción en cuestión – al amparo del Artículo 22(a) de la *Ley Habilitadora de la Autoridad de Energía Eléctrica*; y de la entonces vigente Ley 81-1991, mejor conocida como la *Ley de Municipios Autónomos*.

16. Como resultado de su impugnación, COBRA no ha pagado los arbitrios de construcción que le notificó el Municipio mediante la *Notificación Final de Cobro de Arbitrios de Construcción Adeudados-Periodo 2017-2019*.

Así pues, el foro *a quo* concluyó que a COBRA no le aplicaba la exención del pago de arbitrios de construcción municipal conferida a la AEE mediante la Sección 22(a) de su *Ley Habilitadora, supra*. Añadió que, la propia AEE se encargó contractualmente de excluir las contribuciones del costo de la obra y de limitar cualquier responsabilidad contributiva que excediera del 8.5%. No obstante, que la parte apelante insistió temerariamente en reclamar lo contrario. Por ello, los condenó al pago de costas, gastos y honorarios de abogados.

Posteriormente, el 20 de mayo de 2025, el foro *a quo* emitió la segunda *Sentencia* apelada.[14] En esta, declaró *No Ha Lugar* y desestimó la *Demanda* presentada por COBRA en contra del Municipio de Salinas. En consecuencia, esbozó los siguientes hechos que no estaban en controversia:

1. El Municipio Autónomo de Salinas ("el Municipio") es una entidad jurídica creada al amparo de las leyes del Gobierno de Puerto Rico con capacidad para demandar y ser demandado.

2. COBRA es una compañía de responsabilidad limitada organizada y existente al amparo de las leyes del Estado de Delaware y autorizada a hacer negocios en Puerto Rico.

3. El 19 de octubre de 2017, la AEE y COBRA suscribieron un *Master Services Agreement* ("el Contrato") para rehabilitar y/o reconstruir la infraestructura del sistema eléctrico de Puerto Rico, tras el paso devastador de los huracanes Irma y María.[15]

4. Posteriormente, el 26 de mayo de 2018, la AEE y COBRA suscribieron un segundo contrato – bajo idénticos términos y condiciones a los

---

[14] *Sentencia*, anejo __, págs. 83-104 del apéndice del recurso.
[15] Para poder examinar el *Master Services Agreement*, [el foro primario] tuvo que recurrir al expediente del caso SJ2020CV03931, el cual fue presentado por COBRA en contra de otro municipio (Utuado) y versa sobre **idéntica controversia**.

incluidos en el *Master Services Agreement* - con vigencia hasta el 29 de mayo de 2019.

5. En el **Exhibit B** ("Contractor's Rate Schedule") del *Master Services Agreement* se estableció que la AEE incluiría como parte del costo del Contrato cualquier contribución **que exceda el 8.5%;** y para la cual COBRA no haya obtenido la correspondiente exención. Citamos:

> "In the event that any amounts to be paid to Contractor under this Contract are subject to any taxes (including withholding) imposed by any governmental authority of Puerto Rico **in excess of 8.5% and Contractor has not obtained an exemption for such taxes,** the amount to be paid to Contractor shall be increased by an amount that, after the payment of **such taxes**, leaves Contractor with the amount that Contractor would have received if Contractor had been exempt from all **such taxes**."

6. COBRA estuvo realizando los servicios de restablecimiento y recuperación del sistema eléctrico de Puerto Rico tras el paso de los Huracanes en el 2017 hasta el 25 de mayo 2019.

7. Como parte de los esfuerzos de recuperación y restablecimiento del sistema eléctrico de Puerto Rico, la AEE le solicitó a COBRA que trabajara en el área del Municipio de Salinas.

8. El 2 de noviembre de 2018 Cobra recibió una carta del Municipio, fechada el 25 de octubre de 2018, mediante la cual se reclamaba el pago de arbitrios de construcción, entre otros, dentro del término de cinco (5) días.

9. El 30 de octubre de 2018, el Municipio presentó *Demanda* ante el Tribunal de Primera Instancia, Centro Judicial de Guayama, bajo el caso SA2018CV00158, por concepto de pago de arbitrios de construcción y patentes municipales.

10. El 18 de diciembre de 2019 el Municipio, en acuerdo con COBRA, desistió voluntariamente del pleito SA2018CV00158. El desistimiento fue: **sin perjuicio en el caso de la reclamación de pago de arbitrios de construcción;** y con perjuicio en el caso de la reclamación de patentes municipales.

11. El 24 de enero de 2020 el Municipio envió *Notificación de Imposición de Arbitrios y Penalidades* ("la Notificación") con relación a los Contratos entre COBRA y la AEE sobre *Reparación de la Red Eléctrica de la Autoridad de Energía Eléctrica* luego del paso de los huracanes Irma y María. La *Notificación* establece una deficiencia por la cantidad de **$5,057,938.92,** incluyendo una penalidad administrativa conforme al Artículo 2.007(g) de la Ley de Municipios Autónomos.

12. En su *Notificación* el Municipio indicó que:

"*Según nos fue evidenciado, la empresa Cobra facturó a la AEE las siguientes cantidades por contratos: Contrato Núm. 79503 – $32,261,015.97; Contrato Núm. 81388 – $370,848.42; Total facturado a la AEE – $32,631,864.39. De esa cantidad, a noviembre de 20[1]29 la AEE ha desembolsado a Cobra la cantidad de $32,438,054.46, restando un balance de pago a favor de Cobra por la cantidad de $193,809.93.*"

13. En su *Notificación*, el Municipio también indicó que:

"En vista de que COBRA ha ignorado nuestras solicitudes, la Oficina de Finanzas impone el arbitrio de construcción de oficio, tomando en consideración la información ofrecida en el documento del Departamento de la Vivienda:

Conforme al contrato 79503 y 81388 entre la AEE y COBRA – **$32,631,864,39.**

**05%** de acuerdo a (sic.) la Ordenanza Núm. 23, Serie 2007-08 – **$1,631,593.20**

Penalidad Administrativa Articulo 2.007(9) = (doble del importe del arbitrio impuesto con los intereses correspondientes) – **$3,426,345.72**

Cantidad Arbitrio de Construcci6n a pagar – **$5,057,938.92 36.**

14. Finalmente, en la *Notificación* del Municipio se apercibe que:

"COBRA tiene derecho a solicitar una vista administrativa conforme dispone la Sección 3.1 de la Ley 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, según enmendada, dentro de los 15 luego de recibir esta comunicación, ante el Director de Finanzas. Este a su vez puede delegar el asunto ante un Oficial Examinador."

15. Mediante *Memorando* del 5 de diciembre de 2019, la *Oficina Central de Recuperación, Reconstrucción y Resiliencia de Puerto Rico* ("COR3") estableció lo siguiente en torno a la necesidad de incluir los arbitrios de construcción en los costos estimados para proyectos bajo FEMA:

"No exemption is found for any reconstruction or recovery project performed by third party private contractors for Government Instrumentalities, Municipalities and PNP's. The only exemption is for equipment and contents purchased by health care facilities that are duly certified as exempt under Act 168 of June 30, 1986. For all of the above, **all cost estimates for projects under FEMA Public Assistance shall include Municipal Construction Taxes**, Municipal Patents and the 11.5% Sale and Use taxes (IVU) over materials and equipment as State or Municipal

project costs, since these projects will be bid out and performed by private (third party) contractors. For PNP's, all taxes shall be applied as project costs, except for equipment and contents purchased by health care facilities duly certified as exempt under Act 168 of June 30, 1986."

16. Por estar en desacuerdo con la *Notificación de Imposición de Arbitrios y Penalidades*, COBRA presentó *Demanda* mediante la cual impugna la autoridad del Municipio de Salinas para cobrarle el arbitrio de construcción en cuestión – al amparo del Artículo 22(a) de la *Ley Habilitadora de la Autoridad de Energía Eléctrica;* y de la entonces vigente Ley 81-1991, mejor conocida como la *Ley de Municipios Autónomos.*

17. Como resultado de su impugnación, COBRA no ha pagado los arbitrios de construcción que le notificó el Municipio mediante la *Notificación de Imposición de Arbitrios y Penalidades.*

Conforme a lo anterior, concluyó lo siguiente:

[N]os vemos forzados a concluir que, al ser la AEE una instrumentalidad gubernamental cobijada bajo las definiciones de los entonces vigentes Artículos 1.003(a) y (r) de la *Ley de Municipios Autónomos*, y por ser COBRA un contratista privado, con personalidad jurídica distinta e independiente, **no le aplica a COBRA la exención contributiva que le proveyó la Asamblea Legislativa <u>expresamente a la AEE</u>.** En particular porque:

1) En el **Exhibit B** del *Master Services Agreement*, **la AEE** tomó las medidas necesarias y pertinentes para asegurarse de que – en última instancia – **no vendría obligada a pagar el arbitrio de construcción de 5% que reclama el Municipio de Salinas;**

2) En los Artículos 1.003(a) y (r) de la entonces vigente *Ley de Municipios Autónomos, supra,* la Asamblea Legislativa incluyó, de manera expresa, a las corporaciones públicas bajo la definición de *Agencia Pública;* razón por la cual a los contratistas de dichas corporaciones públicas les aplican las disposiciones expresas de los Artículos 1.003(dd) y 2.007(f)(7) de la entonces vigente *Ley de Municipios Autónomos, supra;* y

3) **La Asamblea Legislativa** – consciente de la exención total de arbitrios de construcción que les confiere su *Ley Habilitadora* a muchas de las corporaciones públicas (incluyendo a la AEE) – **no solo <u>reconoció y validó tal exención</u> de manera expresa; sino que taxativamente dispuso en <u>dos ocasiones distintas y separadas</u>** (Arts. 1.003(dd) y 2.07(f)(7) de la entonces vigente *Ley de Municipios Autónomos, supra*), que:

"No obstante, **esta exención no aplica a las obras de construcción llevadas a cabo por una**

**persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o municipal.**" (Énfasis en el original)

Así pues, determinó que COBRA había sido temeraria al mantener al Municipio de Salinas en un litigio evitable, puesto que, sabían que no había riesgo de que la AEE fuera el responsable del pago de los arbitrios de construcción (5%) que reclamaba dicho Municipio, ya que así lo establecía el *Contrato*. Por ello, condenó a COBRA al pago de las costas, gastos y honorarios de abogados incurridos por el Municipio.

Finalmente, declaró que el Municipio de Salinas tenía autoridad en ley para imponer y requerirle a COBRA el pago de los arbitrios de construcción por las obras que llevó a cabo bajo el contrato con la AEE.

Además, que conforme a "lo reiterado en *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384 (2022), COBRA abandonó el procedimiento administrativo que le requiere agotar el Artículo 2.07(d) de la entonces vigente *Ley de Municipios Autónomos*, se devuelve el caso al Municipio de Salinas para la continuación de dicho procedimiento ante su director de Finanzas."

Inconforme con los dictámenes, el 2 de junio de 2025, la parte apelante presentó el recurso de *Apelación* **KLAN202500498.** Mediante el cual, señaló los siguientes errores:

> Cometió grave error y abusó de su discreción el Tribunal Primera Instancia al desestimar la Demanda bajo el mecanismo de sentencia sumaria cuando lo solicitado por el ayuntamiento fue la desestimación de la acción por falta de jurisdicción del tribunal.
>
> Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al concluir que la compareciente, como

> contratista de la AEE, no está exenta del pago de arbitrios de construcción, aun cuando el Tribunal de Apelaciones resolvió en un caso idéntico que sí lo estaba.

> Cometió un grave error y abusó de su discreción el Tribunal de Primera Instancia al desviarse de la posición adoptada por este Tribunal de Apelaciones cuando le revocó en un caso con controversia idéntica a la de autos.

> Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al imponerle temeridad a las compareciente.

En la misma fecha, COBRA presentó una *Urgente Solicitud en Auxilio de Jurisdicción*. No obstante, emitimos una *Resolución*, declarándola *No Ha Lugar*.

Posteriormente, el 13 de junio de 2025, COBRA presentó el recurso **KLAN202500540** y señaló los siguientes errores:

> Cometió grave error y abusó de su discreción el Tribunal Primera Instancia al concluir que la compareciente, como contratista de la AEE, no está exenta del pago de arbitrios de construcción, aun cuando el Tribunal de Apelaciones resolvió en un caso idéntico que sí lo estaba.

> Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al desviarse de la posición adoptada por este Tribunal de Apelaciones cuando le revocó en un caso con controversia idéntica a la de autos.

> Cometió un grave error y abusó de su discreción el Tribunal de Primera Instancia al dictar sentencia sumaria introduciendo defensas, argumentos y documentos que no fueron levantados ni forman parte del expediente judicial.

> Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al imponerle temeridad a las compareciente.

Con el propósito de lograr el "más justo y eficiente despacho" del asunto ante nuestra consideración, prescindimos de términos, escritos o procedimientos ulteriores. Regla (7)(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.7.

**II.**

**-A-**

La *Ley de Municipios Autónomos,* Ley Núm. 81-1991, 21 LPRA sec. 4001 *et seq.* (Ley Núm. 81-1991) fue creada con el propósito de garantizar a los municipios la autonomía fiscal y gobierno propio para atender con mayor eficacia las necesidades de sus habitantes. *Exposición de Motivos* de la Ley Núm. 81-1991, *supra*. Véase, además: *Const. Jose Carro v. Mun. Dorado*, 186 DPR 113, 121 (2012). Como parte de su política pública, le fue reconocido a todo Municipio autonomía en el orden jurídico, económico y administrativo, lo que incluía la libre administración de sus bienes, disposición de sus ingresos y la forma de recaudarlos e invertirlos. 21 LPRA sec. 4004. Consecuentemente, la *Ley de Municipios Autónomos* facultó a los ayuntamientos municipales a imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables, dentro de los límites territoriales del municipio a través de ordenanzas municipales. *Íd.*, sec. 4001; sec. 4052. Véase, además: *HBA Contractors v. Mun. de Ceiba*, 166 DPR 443, 454 (2005).

Posteriormente, la precitada Ley fue objeto de varias enmiendas, entre ellas, la Ley Núm. 130 de 10 de junio de 1998. 21 LPRA sec. 4052. Dicha enmienda, aclaró que la intención legislativa era que, incluso "aquella obra que no requiera la solicitud o expedición de un permiso por la Administración de Reglamentos y Permisos o por un municipio autónomo, deberá pagar arbitrios de construcción". *Exposición de Motivos* de la Ley de Municipios Autónomos del Estado Libre Asociado de

Puerto Rico, Ley Núm. 130-1998. Conforme a las expresiones contenidas en la *Exposición de Motivos* de la precitada Ley Núm.130-1998:

> [L]a exención otorgada por Ley Núm. 199, antes citada, no se extiende a las personas naturales o jurídicas privadas creadas al amparo de las leyes que las rigen, excepto cuando la ley así lo disponga explícitamente; por lo que tampoco es correcto asumir que las protecciones constitucionales y la ley que cobijan a las agencias estatales, corporaciones públicas y municipios, al Gobierno Federal, se extienden automáticamente a una persona natural o jurídica privada que contrate con estas para realizar obras de construcción.
>
> …
>
> La enmienda propuesta por la Ley tiene como propósito asegurar que todo contratista que realice una obra pública del Gobierno Central pague el arbitrio de construcción correspondiente en el municipio en donde se lleve a cabo dicha obra, previo al comienzo de la misma. Con esta disposición, la Asamblea Legislativa reafirma la facultad cedida por Ley a los municipios de allegar fondos a sus respectivos Gobiernos Municipales para sufragar los servicios que otorgan a sus ciudadanos. *Íd*.

Subsiguientemente, la *Ley de Municipios Autónomos* fue derogada y sustituida por el Código Municipal de 2020.[16] Este nuevo estatuto, igualmente faculta a las entidades municipales a imponer y cobrar los arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables, dentro de los límites territoriales del municipio a través de ordenanzas municipales. 21 LPRA sec. 7331 y sec. 8351. Bajo el palio de su Artículo 2.109, toda obra de construcción realizada por una persona natural o jurídica dentro de los límites territoriales municipales deberá pagar el arbitrio de construcción que corresponda, previo al comienzo de dicha obra, a tenor con las ordenanzas aplicables. *Íd*. sec. 7331.

---

[16] Es de aplicación la derogada *Ley de Municipios Autónomos de Puerto Rico*, Ley Núm. 81-1991 por ser la vigente en el momento que ocurrieron los hechos del presente caso.

El Artículo 1.003(cc) de la derogada *Ley de Municipios Autónomos*, definía *arbitrio de construcción* como "aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción o una obra de construcción dentro de los límites territoriales del municipio." 21 LPRA sec. 4001. Además, *actividad de construcción* se definía como "el acto o actividad de construir, reconstruir, ampliar, reparar, demoler, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada entre los límites territoriales de un municipio." *Íd.*

Por ser de gran importancia para la determinación de las controversias ante nos, el Artículo 2.007(f) de la *Ley de Municipios Autónomos*, declaraba exentas de pagar el referido arbitrio a:

> [A]quellas obras hechas mediante el método conocido como administración, es decir, como parte de los programas de construcción de una agencia del Gobierno Central o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno Federal. No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia[17] o instrumentalidad del Gobierno Central[18] o Municipal. Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica privada actuando a favor o en representación de o por

---

[17] El Art. 1.003 de Ley Núm. 81-1991 define como *agencia pública* "cualquier departamento, negociado, administración, oficina, comisión junta, tribunal examinador, cuerpo, programa, autoridad, entidad, corporación pública y subsidiaria de ésta, instrumentalidad e institución de la Rama Ejecutiva del Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo la Oficina propia del Gobernador". 21 LPRA sec. 4001.

[18] De otra parte, *Gobierno Central*, "significará el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias públicas, instrumentalidades y subdivisiones políticas, excluyendo la Rama Legislativa y la Rama Judicial". *Íd.*

contrato o subcontrato suscrito con una agencia del Gobierno Federal, cuando las leyes o reglamentos federales aplicables así lo permitan. 21 LPRA sec. 4057.

De esta disposición y las definiciones que anteceden se colige que, la exención reconocida a la entidad gubernamental o corporación pública "no aplica a las obras de construcción ejecutadas por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal". *Íd*. sec. 4057.

Cónsono con lo anterior, es pertinente señalar que la Sección 22 de la Ley Núm. 83-1941, establece que la AEE estará exenta del pago de contribuciones. Expresamente dispone lo siguiente:

[L]a Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios. 22 LPRA sec. 212.

El Tribunal Supremo de Puerto Rico ha tenido que atender múltiples controversias relacionadas a la procedencia o no, de la imposición y el cobro de arbitrios de construcción por parte de los municipios. Algunos de estos casos son los que se discuten a continuación.

En *Interior Developers v. Mun. de San Juan*, 177 DPR 693 (2009), nuestro Más Alto Foro resolvió que la Ley Núm. 81-1991, *supra*, no contemplaba el cobro de arbitrios de construcción a una empresa que contratase con la Rama Legislativa para realizar una obra de construcción en el Capitolio. 21 LPRA sec. 7012. A su

vez, fundamentándose en el Artículo 2.002(d) de la Ley Núm. 81-1991, nuestro Tribunal Supremo reiteró que el surgimiento de la obligación tributaria del contribuyente para con el municipio depende de: (1) que se trate de una obra de construcción; (2) que esté dentro de los límites territoriales del municipio, y (3) que sea realizada por una persona natural o jurídica privada, o una persona natural o jurídica privada contratada por una agencia o dependencia del Gobierno Central, municipal o federal. *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 705 (2009). Así pues, determinó que al analizar si un municipio está facultado para cobrar el arbitrio de construcción correspondiente, se debe considerar: (1) el tipo de obra realizada; (2) su localización; y (3) a quién pertenece la obra. *Íd.*

El Tribunal Supremo de Puerto Rico explicó que, conforme a la definición de *contribuyente* contenida en el Artículo 1.003(ee) de la Ley de Municipios Autónomos, *supra*, existen dos (2) posibles escenarios. *Interior Developers v. Mun. de San Juan*, supra, pág. 706. Primero, puede ser contribuyente "la persona que sea dueña de la obra y que personalmente la ejecute". Segundo, también puede ser contribuyente la persona que "sea contratada para realizar la construcción, que a su vez podrá pasar el costo al dueño de la obra." *Íd.* Destacó que, en cuanto al requisito del dueño de la obra, la definición de *Gobierno Central* ofrecida por la Ley excluía expresamente a la Rama Legislativa y la Rama Judicial. *Íd.* Por ello concluyó que, aunque se trataba de una obra de construcción dentro de los límites territoriales del Municipio de San Juan, el dueño de la obra era la Rama Legislativa, faltando, por tanto, el

requisito esencial de que la obra fuera realizada por una persona natural o jurídica privada, o por una persona natural o jurídica privada contratada por una agencia o dependencia del Gobierno Central, Municipal o Federal.

Mientras que, en *Cooperativa de Ahorro y Crédito de Rincón v. Mun. Mayagüez*, 200 DPR 546 (2018), el Tribunal Supremo analizó por primera vez la extensión o alcance de la exención de pagos de arbitrios de contribución a la luz de la ley orgánica de la entidad gubernamental en controversia, más allá de la disposición contenida en la *Ley de Municipios Autónomos*. En esencia, una compañía que contrató la realización de una obra de construcción con una Cooperativa solicitó al Municipio donde estaba localizada la obra que le eximiera de los arbitrios de construcción. Basó su petición en lo dispuesto en el Artículo 6.08(a)(3) de la *Ley de Cooperativas*. *Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002*, Ley Núm. 255-2002, 7 LPRA sec. 1366g.

En dicho caso, nuestro Más Alto Foro resolvió que, el "lenguaje sumamente abarcador ilustrativo de una intención legislativa contra el ejercicio del poder tributario sobre las cooperativas" impedía interpretar que la exención solamente aplicaba a los arbitrios que los municipios les cobran directamente a las cooperativas, pues ello no considera que, eran las cooperativas las que terminarían pagando los arbitrios. *Coop. Ahorro Rincón v. Mun. Mayagüez*, supra, pág. 560. La *Ley de Cooperativas* expresamente incluyó los arbitrios municipales entre los pagos que las cooperativas no tenían que satisfacer. Por ello, distinto a otros casos, la extensión de la exención del pago de los arbitrios de construcción aplicable a la

dueña de la obra, concedida en el caso por *fiat judicial* a la persona jurídica privada que contrató con esta para realizarla, se hizo a modo de excepción, pues, la disposición que la regula así lo hizo posible.

En *Municipio de Utuado v. Aireko Construction Corp.*, 176 DPR 897 (2009), el Tribunal Supremo determinó validar la imposición de arbitrios de construcción a un contratista que contrató una obra de construcción con la Autoridad de Edificios Públicos en el Municipio de Utuado. En este, una persona jurídica privada que contrató la realización de una obra de construcción con una instrumentalidad gubernamental pagó sin cuestionar los arbitrios de construcción al Municipio. El Tribunal Supremo aclaró, que el arbitrio de construcción recae sobre la obra, por lo que, el mero cambio de contratista no requería imponer otro arbitrio de construcción sobre la misma. Este dictamen buscó evitar la doble tributación de arbitrios de construcción cuando el contratista original es sustituido luego de haber iniciado la obra.

De otra parte, en *Río Construction Corp. v. Municipio de Carolina*, 153 DPR 615 (2001), nuestro Tribunal Supremo interpretó que la *Ley de Municipios Autónomos*, exigía el pago de arbitrios municipales a las empresas privadas contratadas por los gobiernos municipales para realizar una actividad de construcción, aun cuando se le exima de obtener un permiso de ARPE.[19]

---

[19] En este caso, la Autoridad de Carreteras de Puerto Rico contrató a una corporación privada para construir un puente en el Municipio de Carolina. Tras el Municipio facturarle los arbitrios de construcción correspondientes, la Corporación se opuso aduciendo que la Ley Núm. 199 de 6 de septiembre de 1996, le eximía de pagar los arbitrios reclamados. Se refirió a que la mencionada Ley excluía "del pago de los arbitrios a los proyectos que no necesitaban obtener un permiso de la Administración de Reglamentos y Permisos". *Río Construction Corp. v. Municipio de Carolina*, 153 DPR 615, 618 (2001).

21 LPRA sec. 4001 *et. seq.* Específicamente sostuvo lo siguiente:

> En vista que la intención legislativa claramente pretende ampliar las facultades contributivas de los municipios, y que la propia Ley Núm. 199, *supra,* no exime del pago de arbitrios a entidades que contraten con el Gobierno, Río Construction debe pagar los arbitrios adeudados al Municipio. … En otras palabras, el referido Artículo 2.007(f) hace clara distinción que, aunque la entidad gubernamental pueda estar exenta de pagar arbitrios de construcción, por administración y con su propio personal, este relevo de obligaciones no se extiende a entidades que contraten con el gobierno. La referida entidad, por ende, tiene que pagar arbitrios de construcción. *Íd*.

Por otra parte, este Foro Apelativo ha atendido varias controversias similares. Por ejemplo, en *Aireko v. Municipio de Moca*, un Panel Hermano de este Foro resolvió que contratistas de la Compañía de Fomento Industrial de Puerto Rico (PRIDCO) estaban exentos del arbitrio de construcción. Se fundamentó en que, al igual que interpretó el Tribunal Supremo en *Coop. Ahorro Rincón v. Mun. Mayagüez*, *supra*, la amplia exención a favor de PRIDCO era extensible a Aireko. Conforme dispuso el Panel, lo contrario sería limitar la exención contributiva concedida a PRIDCO de una manera que no es acorde a la intención legislativa y limitaría su función y razón de ser para el importante fin público de promover el desarrollo económico. Añadió, que, resolver que Aireko no estaba exento del pago de los arbitrios de construcción que el Municipio le reclamó, burlaría la intención legislativa de eximir a PRIDCO e indirectamente a Aireko del pago de arbitrios de construcción municipales.

Mientras que, en *Municipio de Maunabo v. Cobra Acquisitions, LLC.*, este Foro resolvió que, si bien era cierto que la AEE estaba exenta del pago de

contribuciones sobre, entre otras cosas, sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios, según disponía la Sección 22 de su Ley Habilitadora, la compañía contratada, no lo estaba.

De otra parte, en *Lord Construction v. Mun. San Juan,* este foro intermedio determinó que procedía extender la exención concedida a la AEE en virtud de su Ley Habilitadora, a la compañía contratada, Lord Constructions.[20] El Panel, aplicó por analogía lo resuelto en *Cooperativa de Ahorro de Rincón v. Mun. Mayagüez*, *supra*, y concluyó que debido a que el arbitrio de construcción recaía sobre la obra, y no sobre la persona que la realizaba, al ser la AEE una corporación pública exenta del pago de los arbitrios la dueña de esta, el Municipio no podía requerirle el pago de los arbitrios de construcción a la compañía contratada; esto porque no nace la obligación de pago de arbitrios de construcción. Indicó que, interpretar lo contrario frustraría la intención legislativa de otorgarle la exención contributiva a la AEE, pues es ésta quien en última instancia viene obligada a pagar dicho arbitrio.

Finalmente, este Tribunal de Apelaciones en *Super Asphalt Pavement Corp. v. Municipio Autónomo de Cayey*, KLAN202400286, concluyó que la compañía Super Asphalt contratada por la Autoridad de Carreteras y Transporte

---

[20] La Sección 22(a), establecía:
> [L]a Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios.

(ACT) tenía que satisfacer los arbitrios de la construcción al Municipio de Cayey. Determinaron que, la disposición de exención sobre el pago de arbitrios de construcción contenida en la Ley habilitadora de la ACT no disponía nada para extenderla a favor de una persona natural o jurídica privada que fuera contratada para la realización de una obra de construcción. Por ello, una vez aplicaron las guías establecidas sobre los arbitrios de construcción "es decir, el tipo de obra, su localización y a quién pertenece la misma, y a la luz del análisis preciso de la disposición de la Ley habilitadora de la ACT, resolvemos que Super Asphalt no está eximida del pago de los arbitrios de construcción de la obra que contrató con la ACT realizar en el Municipio de Cayey."

Nuestro Tribunal Supremo ha examinado la intención legislativa de cada ley habilitadora o de la medida aplicable para determinar si la exención contributiva de la entidad contratante en particular cobija a aquellas personas contratadas o subcontratadas para realizar la obra de construcción. Véase, *Interior Developers v. Mun. de San Juan*, supra; *Cooperativa de Ahorro y Crédito de Rincón v. Mun. Mayagüez*, supra. En otras palabras, el análisis incluye la evaluación de la ley habilitadora de la agencia o entidad gubernamental para determinar si, contrario a lo que dispone la *Ley de Municipios Autónomos*, las personas naturales o jurídicas privadas que contraten con esta, también estaría eximida del pago de arbitrios.

**-B-**

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de

las de Procedimiento Civil. 32 LPRA Ap. V, R. 44.1. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión […]". *Íd*. De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra." *Íd*.

Particularmente, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713 (1987).

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008). La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador." *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 519-520 (2010). Los criterios para evaluar al determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados. *Asociación de Condóminos v. Trelles Reyes*, 120 DPR 574, 579 (1988).

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *Rivera Durán v. Banco Popular,* 152 DPR 140 (2000).

## III.

En el caso de autos, en esencia, COBRA impugna las *Sentencias* en la que el foro primario declaró *no ha lugar* y desestimó la reclamación para que fueran eximidos del pago de arbitrios de construcción solicitados por el

Municipio, además de la imposición de honorarios por temeridad.

En sus recursos, la parte apelante alega que erró el foro primario al concluir que no le era extensiva la dispensa total de contribuciones que la Ley Habilitadora le confiere a la AEE, como consecuencia, debían pagarle a los Municipios los arbitrios de construcción por el trabajo realizado a la red eléctrica. Sostiene que, el foro primario inició su análisis jurídico dándole prioridad a la Ley Núm. 81-1991, *supra*, cuando debió ser a la Ley Núm. 83-1941, *supra*, la cual expresamente dispone que sus disposiciones prevalecerán sobre cualquier otra ley. Por ello, arguye que la *Ley de Municipios Autónomos* no incorporó alguna disposición que estableciera que las obras a realizarse en propiedad de la AEE estarían obligados a pagar arbitrios de construcción, por lo que, su omisión es que prevalece la exención de la Ley Núm. 83-1941. Así pues, reitera que, si la AEE está exenta del pago, su obra también lo está. Por ello, enfatizan que exigirle el pago del arbitrio de construcción a COBRA, sería imponerle el arbitrio *de facto* a la AEE como dueño de la obra.

La Ley Núm. 81-1991, *supra*, establece quién debe pagar los arbitrios por las obras de construcción que son llevados a cabo dentro de los límites geográficos de un Municipio. En particular y pertinente a la controversia ante nos, el Artículo 2.002(d) de la precitada Ley, dispone que una obra de construcción "que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal o del

Gobierno Federal […] deberá pagar arbitrio de construcción correspondiente […]" al municipio donde se lleve a cabo la obra. Artículo 2.002(d) de la Ley Núm. 81-1991, *supra*.

La *Ley de Municipios Autónomos* incluye a las *corporaciones públicas* bajo el término de *agencia pública*. Art. 1.003(a) de la Ley de Municipios Autónomos, *supra*. De igual forma, considera *contribuyente* a toda:

> […] persona natural o jurídica obligada al pago del arbitrio sobre la actividad de la construcción cuando:
>
> > (1) Sea dueño de la obra y personalmente ejecute las labores de administración y la labores físicas e intelectuales inherentes a la actividad de construcción.
> >
> > (2) Sea contratada para que realice las labores descritas en la cláusula (1) de este inciso para beneficio del dueño de la obra, sea éste una persona particular o entidad gubernamental. El arbitrio formará parte del costo de la obra. Art. 1.003(a) de la *Ley de Municipios Autónomos*, 21 LPRA sec. 4001(ee).

El Artículo 2.002 inciso (d) de la Ley Núm. 81-1991, *supra*, fue interpretado por nuestro Tribunal Supremo en el caso de *ECA General Contractors, Inc. v. Municipio Autónomo de Mayagüez*, 200 DPR 665 (2018), en el que reiteró la norma sobre la obligación de pagar el arbitrio de construcción. Específicamente, indicó que esta obligación nace cuando concurren las siguientes circunstancias:

> (1) que se trate de una obra de construcción;
>
> (2) que esté dentro de los límites territoriales del municipio; y
>
> (3) que la realice una persona natural o jurídica privada, o una persona natural o jurídica privada contratada por una agencia o dependencia del Gobierno Central, municipal o federal.

Luego de evaluar la controversia ante nos, resulta preciso concluir que los Municipios tienen un derecho a obtener un remedio en Ley respecto a su reclamo de arbitrios contra COBRA. Veamos.

La AEE contrató a COBRA para trabajos de construcción sobre el servicio eléctrico en varios Municipios. Es evidente que, dicho contrato fue llevado a cabo dentro de los límites territoriales de cada Municipio afectado y fue realizado por una empresa privada (COBRA) contratada por una instrumentalidad pública (AEE).

De otra parte, el Artículo 2.007(f) de la *Ley de Municipios Autónomos*, 21 LPRA sec. 4057(f)(7), establece unas exenciones para el pago de arbitrios de construcción, donde dispone lo siguiente:

> Quedan exentas del pago de arbitrio de construcción aquellas obras hechas mediante el método conocido como administración, es decir, como parte de los programas de construcción de una agencia del gobierno central o sus instrumentalidades, una corporación pública, un municipio o una agencia del Gobierno Federal. No obstante, esta exención no aplica a las obras de construcción llevadas a cabo por una persona natural o jurídica privada, actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal. Tampoco aplica dicha exención cuando se trate de obras de construcción llevadas a cabo por una persona natural o jurídica privada actuando a favor o en representación de o por contrato o subcontrato suscrito con una agencia del gobierno federal, cuando las leyes o reglamentos federales aplicables así lo permitan.

Así pues, podemos concluir que, en efecto la AEE está exenta del pago de los arbitrios de construcción por ser una corporación pública. De igual forma lo establece la Sección 22(a) de *Ley de la Autoridad de Energía Eléctrica*, *supra*, que dispone que:

> […] la Autoridad no será requerida para pagar ningunas contribuciones estatales o municipales, o impuestos de cualquier tipo

sobre ninguna de las propiedades muebles e inmuebles adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de cualquier empresa, o sobre los ingresos derivados de cualesquiera de sus empresas y actividades, o sobre su volumen de negocios. […].

Como podemos apreciar, la disposición de exención sobre el pago de arbitrios de construcción establecida en la Ley Núm. 83-1941, *supra*, nada dispone sobre extenderla a favor de personas naturales o jurídicas privadas que contraten con ella para una obra de construcción. Por tanto, la ausencia de una disposición especial que conflija con la Ley Núm. 81-1991, *supra*, es el mandato de ley aplicable. Así pues, es forzoso concluir que no hubo intención del legislador en extender la exención del pago de arbitrios de la AEE a COBRA. En *Coop. Ahorro Rincón v. Mun. Mayagüez*, supra, Nuestro Tribunal Supremo expresó que "las exenciones contributivas se deben interpretar restrictivamente y, en caso de duda, a favor de su inexistencia". *Íd.*; *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267 (2011).

Por consiguiente, luego de analizar las legislaciones aplicables, podemos determinar que las exenciones no son aplicables a COBRA. La *Ley de Municipios Autónomos*, *supra*, provee para el pago de arbitrios a la compañía que ejecuta la obra y que haya sido contratada por la AEE, así pues, su exención no le es extensiva.

En cuanto a su último señalamiento de error, COBRA alega que incidió el foro primario al imputarle temeridad. Señala que, no surge hecho o razón alguna para justificar la imputación de temeridad. Por lo que, reitera procede su revocación.

La Regla 44.1(d), dispone que en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Cabe precisar que, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador." *Raoca Plumbing v. Trans World*, supra.

Cónsono con lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido actuó con prejuicio o parcialidad, abusó de su discreción o se equivocó en la interpretación de las normas procesales o de derecho. En este caso, no le asiste la razón a COBRA al plantear que el foro primario incidió al imponerles temeridad. Por tanto, concluimos que el cuarto señalamiento de error no se cometió.

En virtud de lo anterior, concluimos que los señalamientos de error no fueron cometidos por el Tribunal de Primera Instancia.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** las *Sentencias* apeladas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones